UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARELL RYAN LONGACRE,<br><br>Petitioner,<br><br>vs.<br><br>D. LONG,<br><br>Respondent. | No. 2:14-cv-1440-EFB P<br><br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a judgment of conviction entered against him on April 26, 2011, in the Shasta County Superior Court on charges of petty theft with a prior theft-related conviction. He seeks federal habeas relief on the grounds that the trial court violated his federal constitutional rights in failing to properly instruct the jury on circumstantial evidence as it applied to the charge against him. Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

1

Defendant Darrell Ryan Longacre appeals from a conviction for petty theft with a prior theft-related conviction. He now contends the trial court committed prejudicial error by failing in its sua sponte duty to instruct the jury with CALCRIM No. 224 [use of circumstantial evidence to find guilt], because the prosecution substantially relied on circumstantial evidence to establish that he committed petty theft.

Finding no prejudice, we will affirm the judgment.

**BACKGROUND**

While on duty as manager of an Auto Zone store, Benjamin Carter observed a man enter his store, pick up some mufflers that were on a shelf, "fumbl[e] about" with his baggy sweatpants, and walk around the back of the store. Although Carter told the 9–1–1 operator that he saw the man put a chrome exhaust tip in his pants, at trial Carter testified that he saw the man fumbling with the mufflers and then with his pants. Carter did not testify that he saw the man put something in his pants.

Carter approached the man and asked if he needed any help. The man responded that he did not need help. Carter said the man then "bolted for the door." But Carter also said the man remained in the store for about 10 minutes before he left.

Carter suspected the man had taken something from the store because he "bolted for the door" when Carter asked him a question and because Carter saw a bulge in the man's sweatpants. The bulge extended from the man's waist to about his knee.

Carter followed the man outside. He took note of the man's car and wrote down the car's license plate number. He returned inside the store and called 9–1–1. Carter gave the 9–1–1 operator the license plate number of the car and a detailed physical description of the man.

Carter later found an empty Flowmaster brand muffler box in his store. According to Carter, the box should not have been empty.

City of Redding Police Officers Justin Duval and Nicholas Weaver were dispatched to the residence of defendant's girlfriend Whitney Cole in response to a theft report. Defendant lived with Cole. The officers arrived at the residence 13 minutes after Carter's 9–1–1 call.

Officer Weaver saw a car at defendant's residence which he believed matched the description of the suspect vehicle. Carter reported that defendant left the store in an early- or mid - 1990s dark gray, two-door Nissan with the words "O-snap" spray painted on the side. The car Officer Weaver saw was a 1991 grey two-door Ford Probe. Although Cole was the registered owner of the Ford Probe, defendant was its primary driver. Cole told Officer Weaver defendant wore sweatpants that day.

> The officers also saw a black, apparently new Flowmaster brand muffler on a picnic bench next to the front door of defendant's apartment. Cole did not notice the muffler before the officers arrived. She did not know why the muffler was on her front porch.
>
> Carter identified the muffler found near defendant's apartment as a muffler taken from his store. The muffler was consistent with the type of muffler that would have been in the empty box Carter found in his store. Police returned the muffler to Carter. At the time of trial Carter did not know the location of the muffler, but he identified People's exhibit 4–A as a Flowmaster brand muffler that looked like the muffler recovered by the police. Officer Duval also said People's exhibit 4–A resembled the muffler he saw near defendant's apartment.
>
> In an initial photographic lineup, Carter did not identify defendant as the man he saw in his store. But he identified defendant in a second lineup, which used a more recent photograph of defendant. At trial, Carter again identified defendant as the man he saw in his store.
>
> Defendant argued to the jury that the muffler found near his home in April 2010 belonged to him and was not taken from the Auto Zone store. Cole testified that defendant worked on cars and it was not unusual to have car parts at her home. In addition, defense witnesses testified that defendant left a liquidation sale in February or March 2010 with a box containing a black muffler and that in February or March 2010, someone named Dave delivered car parts to defendant's home.
>
> The jury convicted defendant of petty theft. In a bifurcated proceeding, the trial court found certain enhancement allegations true, dismissed other enhancement allegations, exercised its discretion to dismiss a prior strike conviction, and sentenced defendant to six years in prison. In another case, the trial court sentenced defendant to one year four months for an offense committed while in custody and imposed one year for an enhancement, resulting in an aggregate sentence of eight years four months.

*People v. Longacre*, No. C068477, 2013 WL 5884163 at **1-2 (Cal. 3d Dist. Nov. 4, 2013).

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

/////

4

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate

6

that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Jury Instruction Claim**

Petitioner's sole ground for federal habeas relief is his claim that the trial court violated his federal constitutional rights in failing to instruct his jury on circumstantial evidence with CALCRIM No. 224. ECF No. 1 at 5.[2] For the reasons that follow, this claim must be denied.

**A. State Court Decision**

The California Court of Appeal concluded that the trial court erred in failing to give CALCRIM No. 224 under the circumstances of this case, but that the error was harmless. The court reasoned as follows:

> Defendant contends the trial court committed prejudicial error by failing in its sua sponte duty to instruct the jury with CALCRIM No. 224, because the prosecution substantially relied on circumstantial evidence to establish that he committed petty theft.
>
> The trial court did not instruct with CALCRIM No. 224. Instead, it instructed with CALCRIM Nos. 223 [general instruction on direct and circumstantial evidence] and 225 [use of circumstantial evidence to find requisite intent or mental state].
>
> The trial court has a sua sponte duty to instruct with CALCRIM No. 224 if the prosecution's case substantially relies on circumstantial evidence to establish any element of the charged offense. (*People v. Heishman* (1988) 45 Cal.3d 147, 167 (*Heishman*); Bench Notes to CALCRIM No. 224 (2011) p. 56.) The trial court is not required to instruct with CALCRIM No. 224 if the prosecution's evidence is direct or the circumstantial evidence is merely incidental to and corroborative of direct evidence. (*Heishman, supra*, 45 Cal.3d at p. 167; *People v. Malbrough* (1961) 55 Cal.2d 249, 250–251; *People v. Shea* (1995) 39 Cal.App.4th 1257, 1271.)

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

> Here, the evidence of defendant's guilt was not direct. No one saw defendant place a muffler in his sweatpants. Rather, defendant's guilt could be inferred from a pattern of incriminating circumstances. As the prosecutor acknowledged, the case against defendant was primarily based on circumstantial evidence. The prosecution laid out its case as follows: Carter saw defendant fumbling with his sweatpants and walk out of the store with a bulge in his pants extending from his waist to his knee; the police saw a car generally matching the description of the suspect vehicle and a Flowmaster brand muffler near defendant's apartment; defendant's girlfriend said defendant wore sweatpants that day; Carter found an empty Flowmaster brand muffler box in his store; and Carter picked out defendant in a photographic lineup.
>
> On this record, the trial court was required to instruct with CALCRIM No. 224. (*Heishman, supra*, 45 Cal.3d at p. 167.)
>
> Nonetheless, it does not follow that we must reverse the judgment. The failure to properly instruct on the sufficiency of circumstantial evidence is evaluated under the *People v. Watson* (1956) 46 Cal.2d 818 standard where, as here, the trial court instructed the jury on the People's burden to prove defendant's guilt beyond a reasonable doubt. (*People v. Rogers* (2006) 39 Cal.4th 826, 886; *People v. Bloyd* (1987) 43 Cal.3d 333, 352.) Reversal is not warranted unless an examination of the entire cause shows it is reasonably probable the defendant would have achieved a more favorable result had the error not occurred. (*People v. Watson, supra*, 46 Cal.2d at p. 836.)
>
> No such probability is apparent here. In addition to the circumstantial evidence described above, Carter identified the muffler found near defendant's apartment as a muffler stolen from his store. He said the Flowmaster brand muffler box he found on the shelf should not have been empty and it was "the exact box that [the officer who contacted Carter] described to" Carter. Defendant drove an early 1990s grey two-door car similar to the car Carter described to authorities. And there was no evidence that defendant possessed a new Flowmaster brand muffler prior to the date of the theft at the Auto Zone store. The circumstantial evidence pointed convincingly to defendant's guilt and was not equally consistent with a reasonable conclusion of defendant's innocence. *(Heishman, supra*, 45 Cal.3d at p. 167.) Accordingly, reversal is not warranted.

*Longacre*, 2013 WL 5884163 at **2-3.

### B. Applicable Legal Standards

In general, a challenge to jury instructions does not state a federal constitutional claim. *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983). An error in a state court determination that a jury instruction was not warranted under state law cannot form the basis for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Menendez v.*

*Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005).  Rather, "a claim that a court violated a petitioner's due process rights by omitting an instruction requires a showing that the error 'so infected the entire trial that the resulting conviction violate[d] due process.'"  *Menendez*, 422 F.3d at 1029 (citations omitted.  Where the challenge is to a refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (same).

The case of *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) provides the test for prejudice in this context.  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).  Under *Brecht*, "an instructional error is prejudicial and habeas relief is appropriate only if, after reviewing the record as a whole, we conclude that there was a substantial and injurious effect or influence on the verdict, or if we are 'left in grave doubt' as to whether there was such an effect."  *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946) (applying *Brecht* harmless error test in the context of a jury instruction claim).  Grave doubt exists in the "unusual" circumstance where, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

**C. Analysis**

Petitioner argues that the trial court should have instructed his jury with CALCRIM No. 224 instead of CALCRIM No. 225 because the entire case against him was based on circumstantial evidence.  He also argues that the error was prejudicial because the circumstantial case against him was not strong.

CALCRIM No. 224 provides as follows:

> Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.
>
> Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty.  If you can draw two or more reasonable

> conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

CALCRIM No. 225 provides:

> The People must prove not only that the defendant did the act[s] charged, but also that (he/she) acted with a particular (intent/ [and/or] mental state). The instruction for (the/each) crime [and allegation] explains the (intent/ [and/or] mental state) required.
>
> A[n] (intent/ [and/or] mental state) may be proved by circumstantial evidence.
>
> Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.
>
> Also, before you may rely on circumstantial evidence to conclude that the defendant had the required (intent/ [and/or] mental state), you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required (intent/ [and/or] mental state). If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required (intent/ [and/or] mental state) and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required (intent/ [and/or] mental state) was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

Thus, CALCRIM No. 225 is more narrowly tailored to the jury's consideration of circumstantial evidence regarding the defendant's mental state, whereas CALCRIM No. 224 applies more broadly to the jury's consideration of both the defendant's acts and his mental state.

The state court record reflects that petitioner's trial counsel asked the trial court to instruct the jury with the broader language set forth in CALCRIM No. 224. Reporter's Transcript on Appeal (RT) at 83. Counsel argued that "225 is given when intent and mental state is the only thing proven by circumstantial evidence. But I think the entire case is circumstantial evidence so we would need 224." *Id.* The trial judge concluded, however, that CALCRIM No. 225 was the more appropriate instruction given the "direct evidence" from the store manager that petitioner stole the muffler. *Id.* at 83-84. As set forth above, the California Court of Appeal disagreed,

1    finding that the trial court should have instructed the jury with CALCRIM No. 224 because "the
2    evidence of [petitioner's] guilt was not direct." *Longacre*, 2013 WL 5884163 at *2.

3          Assuming arguendo that the trial court committed federal constitutional error in failing to
4    instruct petitioner's jury with CALCRIM No. 224, petitioner has failed to demonstrate that he
5    was prejudiced by the error.  In light of the strong circumstantial evidence that petitioner stole the
6    muffler from the Auto Zone store, the trial court's failure to instruct the jury with CALCRIM No.
7    224 could not have had a substantial and injurious effect or influence on the verdict in this case.
8    As explained by the California Court of Appeal, the record reflects that Benjamin Carter testified
9    he saw petitioner come in the store, "fumbl[e] about with our mufflers and then with his pants,"
10   and walk around the back of the store.  RT at 41.  When Carter approached petitioner and asked
11   him if he needed help, petitioner left "within ten minutes," and "bolted for the door." *Id.*  Carter
12   testified that he believed petitioner had taken something from the store because "most people
13   don't bolt for the door when I ask them if they need help and walk towards them." *Id.* at 42.
14   Carter also observed that petitioner had "a bulge in his pants . . . from his waist down to about his
15   knees." *Id.*  He stated that after he was contacted by the police he went to the sales floor and
16   noticed that there was an empty Flowmaster muffler box on the shelf. *Id.* at 44.  He testified there
17   was no reason for an empty box to be on the store shelf. *Id.*  The police later came to the store
18   and showed Carter a Flowmaster muffler, and Carter "brought them the box." *Id.* at 45.  When
19   the police arrived at petitioner's house, they discovered a car matching the description of
20   petitioner's car and a new muffler that appeared to match the one that was missing from the store.
21   *Id.* at 44-47, 66-68.

22         Petitioner points to trial testimony that he believes demonstrates the circumstantial
23   evidence against him was not strong.  He notes that Carter told the 911 operator he saw petitioner
24   put a chrome exhaust tip into his pants, but at trial he simply testified that he saw petitioner pick
25   up a couple of exhaust tips and them place them back down on the shelf.  ECF No. 10 at 16-17;
26   RT at 44.  Petitioner also notes that Carter testified petitioner "bolted" out of the store, but he also
27   testified that petitioner left the store within ten minutes of his conversation with Carter.  Petitioner
28   argues that these statements "contradict each other."  ECF No. 10 at 17.

11

Petitioner points out that the stolen muffler was not produced at trial and he argues that the lack of specificity regarding the serial number on the stolen muffler made it "hard to see how Mr. Carter could have known that the muffler Officer Weaver was describing over the phone was the 'exact' muffler missing from the empty box at the store." *Id.* at 18-20. Petitioner also notes that contrary to the Court of Appeal's statement that there was no evidence he possessed a new Flowmaster muffler prior to the date of the theft at the store, a defense witness testified that petitioner left a liquidation store a couple of months before the theft with a black muffler. *Id.* at 21; RT at 96-98.

After a review of the record, this court concludes that the decision of the California Court of Appeal that petitioner was not prejudiced by the trial court's failure to instruct the jury with CALCRIM No. 224 is not contrary to or an unreasonable application of federal law, nor is it based on an unreasonable determination of the facts of this case. Given the evidence of petitioner's guilt, summarized above, the trial court's failure to give CALCRIM No. 224 did not render petitioner's trial fundamentally unfair or have a substantial and injurious effect on the verdict. Certainly, the state court's conclusion that the instructional error was harmless is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, petitioner is not entitled to habeas relief on his claim before this court.

**IV. Conclusion**

Although petitioner has consented to proceed before a magistrate judge, respondent has ignored the Order Re Consent or Request For Reassignment. Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly assign a United States District judge to this action.

Further, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  October 20, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13